Carl Wescott
8210 E. Via de la Escuela
Scottsdale, AZ 85258
*in propria persona*
+1 936 937 2688
carlwsoj@gmail.com

FILED
2021 MAR 22 PM 1:29
CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| CARL WESCOTT,<br><br>              Plaintiff,<br>vs.<br><br>JOSEPH SIMONETTA<br><br>              Defendant.<br><br>+ DOES 1 through 25 | Civil Action No. 3:21-cv-318-BJD-JRK<br><br>**PLAINTIFF'S COMPLAINT FOR IMPOSITION OF CONSTRUCTIVE TRUST; NEGLIGENCE, BREACH OF FIDUCIARY DUTY; BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING and AN ACCOUNTING**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff Carl A. Wescott, proceeding *pro se*, complains of Defendant Joseph Simonetta; in support of his complaint, the Plaintiff states as follows:

**PARTIES**

1. The Plaintiff is an individual currently residing in Scottsdale, Arizona.

2. The Defendant, Joseph Simonetta ("Simonetta") is an individual residing in Sarasota, Florida.

1

## JURISDICTION

3. This Court has jurisdiction pursuant to 28 USC 1332, there being diversity of citizenship and the amount in controversy exceeding $75,000 exclusive of fees and costs.

## VENUE

4. Venue is proper in this Court because it is the venue of residence of the Defendant.

## BRIEF CASE SUMMARY

5. This case is about a partnership entered into for the purpose of developing property in Ecuador. The Ecuador project was successful but Defendant Simonetta, hoping for an especially comfortable retirement, schemed to obtain partnership assets for pennies on the dollar at his partner's expense. Knowing that his partner was experiencing cash flow difficulties, in part because of a contentious divorce, Simonetta converted substantial partnership funds to further constrict his liquidity. When that sent the Plaintiff into bankruptcy, Simonetta scooped up millions of dollars in partnership assets for pennies on the dollar. He remained in Ecuador, whose extradition treaty with the United States has many loopholes.

### A. The Parties' Course of Dealing

6. The Plaintiff was a successful real estate developer with a proprietary business model he hoped to apply to the Latin American market. The Plaintiff realized that Central and South American venues were increasingly attractive to American expatriates because of the relatively low cost of living and the climate and scenic beauty. The Plaintiff's business model was to identify

2

promising parcels and do the preliminary work of development, hiring architects, making initial infrastructural improvements, obtaining permits, and marketing the development concept. The land could then be sold to a developer at a substantial profit.

7. The Plaintiff's plan was to ramp up to multiple projects which he would identify, using his expertise, and for which he would obtain financing using his contacts and building on his track record of success. If the Plaintiff was to obtain the scale he required, he would need trustworthy agents and partners on the ground at each location.

8. The Plaintiff's business model was proprietary, novel and unique. The Plaintiff had identified precisely the steps that would maximize his internal rate of return in that locale. The business method that comprised:

    (a) Identifying and valuing desirable locations;
    (b) Retaining architects and planners, often deferring portions of their fees for equity interests;
    (c) Obtaining permits and taking other preliminary infrastructural steps and;
    (d) Marketing the development concept to experienced developers who would then complete the project; sub-paragraphs (a) –(d) collectively, hereafter "Plaintiff's Business Method" comprised one or more trade secrets protectable pursuant to the California Trade Secrets Act, and more germane to this Court, the Defend Trade Secrets Act.

9. At all times, the Plaintiff took all reasonable steps to protect Plaintiff's Business Methods

10. The Plaintiff selected Simonetta as his partner-on-the-ground and the parties formed the Vilcabamba Homes partnership.

11. The parties were and regarded themselves as partners, each owing a strict fiduciary duty of good faith and fair dealing to the other. The Plaintiff disclosed Plaintiff's Business Method to Simonetta as needed under strict confidence in the context of a fiduciary relationship.

3

12. In 2005 the plaintiff invested $400,000 with Simonetta and into the Hacienda San Joaquin real estate development project. In 2006, Wescott and Simonetta signed their initial partnership agreement in which Wescott would provide capital (another $300,000 to Ecuador and a 6-digit amount to buy out Joseph Bartel's partnership interests). Wescott had the vision and marketing knowledge and capital, while Simonetta was to manage local workers, preside over the sale of lots and houses, with the written agreement that proceeds would be distributed 50/50 between the partners. Accordingly, Simonetta was receiving all funds in a strict fiduciary capacity, in trust, for the benefit of the partnership and his partner the Plaintiff.

13. Unbeknownst to the Plaintiff, Simonetta devised a scheme ("Simonetta's Scheme") to deprive Plaintiff of his rightful share of both projects.

14. Simonetta was aware that the Plaintiff was taking all financial risks and advancing all capital. Accordingly, the Plaintiff was leveraged and exposed to cash flow risk.

15. Simonetta, in blatant breach of his fiduciary duty to the Plaintiff, "skimmed" $504,000 from the proceeds of the project rather than allocating 50% or $252,000 to the Plaintiff.

16. The Plaintiff became pressed for cash, at which point Simonetta announced his plan to "retire" asking the Plaintiff for a buy-out of his partnership share. This in turn delayed the launch of the parties' next project and associated revenues.

17. Simonetta's Scheme was to first undermine the Plaintiff's cash flow by secretly converting funds; delay revenues from his second project by entering into drawn out negotiations for a buy-out; and then force the Plaintiff into bankruptcy where he could make a predatory purchase of valuable assets at fire-sale prices.

18. The parties' first project, Hacienda San Joaquin was a complete success. The Plaintiff planned a second, adjacent project that the parties believed would be successful (to be called "Sunrise"). The Plaintiff disclosed that project, in a fiduciary context, to Simonetta, applying Plaintiff's Business Method. Simonetta lacked the expertise to identify, value and market that project without Plaintiff's Business Method. It was at this point that Simoneta announced his plan to "retire" and invited negotiations on a buy-out of his interest in the partnership.

19. Simonetta's representation that he intended to retire and take a fair buy-out ("Simonetta's Representation") was false when made. Alternatively and conjunctively, Simonetta concealed and omitted to disclose Simonetta's Scheme ("Simonetta's Omission") that would have been material to Plaintiff's decision to negotiate with Simonetta.

20. The Plaintiff reasonably relied on Simonetta's Representation and Simonetta's Omission. Believing that Simonetta intended to negotiate a buy-out in good faith, the Plaintiff offered $500,000 per year for three years (reflecting his momentarily strained cash flow position) contingent on due diligence. The Plaintiff then examined Simonetta's financial records. It was at this point that the Plaintiff identified the $252,000 (net) misappropriation by Simonetta.

21. The Plaintiff demanded that Simonetta compensate him for the $252,000 misappropriated. Simonetta refused to compensate the Plaintiff and instead demanded a full buy-out.

22. Simonetta was aware that Plaintiff's liquidity was deteriorating. This, in turn, contributed to trouble in the Plaintiff's marriage that as Simonetta had foreseen, led to a further deterioration in the Plaintiff's financial position, making it difficult for him to legally pursue Simonetta at the time and/or exploit the second project that had been identified as a result of Plaintiff's Business Method.

23. The Plaintiff was forced into personal bankruptcy in 2012, in material part because of drawn out haggling by Simonetta.

24. The denouement of Simonetta's scheme was achieved in 2013, when he purchased the Plaintiff's interest in the Partnership (including the lucrative adjacent project) worth millions of dollars, for $50,000.

25. Simonetta then pocketed handsome projects from the Plaintiff's assets and the Plaintiff's Business Method and eventually absconded from the country.

26. The Plaintiff has recently located Simonetta here in Florida and is filing this legal Complaint so that the scales of justice can be properly balanced.

## COUNT I – IMPOSITION OF CONSTRUCTIVE TRUST

27. Plaintiff realleges paragraphs 1-26 as if fully set out herein.

28. At all times, Simonetta, As Plaintiff's Partner, promised to deal fairly with the Plaintiff and not to independently exploit the Plaintiff's real property, funds, or intellectual property ("Simonetta's Promise").

29. The Plaintiff relied on Simonetta's Promise.

30. Simonetta breached Simonetta's Promise by:

    (a) Converting $252,000 from partnership revenue;

    (b) Conceiving and executing Simonetta's Scheme to misappropriate partnership assets for pennies on the dollar and Plaintiff's intellectual property royalty-free.

31. The parties were in a confidential partnership relationship.

6

32. In reliance on Simonetta's Promise, the Plaintiff left practical control of the real estate at issue as well as access to the partner's funds in the hands of Simonetta.

33. Simonetta was unjustly enriched by his execution of Simonetta's Scheme in that he gained control of funds that should have been the Plaintiff's and ultimately, control of the partnership real estate for pennies including properties that the Plaintiff had paid 100% of the cost for and independent of their partnership.

34. The Defendant also wrongfully gained the Plaintiff's intellectual property royalty-free.

35. Under principles of equity, this Court should impose a Constructive Trust on the monies, real estate and intellectual property converted by Simonetta for the benefit of Plaintiff, subject to a complete accounting.

## Count II – FRAUDULENT MISREPRESENTATION & OMISSION

36. The Plaintiff realleges paragraphs 1-26 as if fully set out herein.

37. Simonetta's Representation and Simonetta's Omission were intentionally false and misleading when made.

38. Simonetta's Representation and Simonetta's Omission were material in that the Plaintiff would not have allowed Simonetta to retain control of his assets, including funds, real property and intellectual property had he known the true facts about Simonetta's intentions and misconduct.

39. Simonetta intended that the Plaintiff rely on Simonetta's Representation and Simonetta's Omissions as part of Simonetta's Scheme.

40. The Plaintiff did in fact reasonably rely on Sionetta's Representation and Simonetta's Omission

7

41. The Plaintiff has been damaged as a result of his reliance on Simonetta's Representation and Simonetta's Omission by losing $252,000 from partnership revenue and the loss of other partnership revenue, partnership real property as well as the value of his intellectual property.

## Count III – BREACH OF FIDUCIARY DUTY

42. The Plaintiff realleges paragraphs 1-26 as if fully set out herein.

43. At all relevant times, Simonetta was acting as the Plaintiff's *de facto* partner and actual partner, and trustee and agent of partnership assets with strict fiduciary duties to the Plaintiff and to the partnership.

44. Simonetta violated his fiduciary duties in at least the following ways:

   (a) Skimming $252,000 in partnership revenue;

   (b) Engaging in dilatory bad faith negotiating tactics to weaken the Plaintiff's cash position and;

   (c) Misappropriating the Plaintiff's proprietary valuation methods, disclosed in confidence, to obtain personal control of partnership real property for pennies on the dollar. (Collectively, "Simonetta's Fiduciary Breaches").

45. The Plaintiff has been damaged by Simonetta's Fiduciary Breaches by losing $252,000 from partnership revenue and the loss of partnership real property as well as the value of his intellectual property.

## Count IV – BREACH OF CONTRACT

46. Plaintiff realleges paragraphs 1-26 as if fully set out herein.

47. Simonetta materially breached the parties' contract by skimming $252,000 in partnership revenue and by failing and refusing to perform the services he promised under the contract.

48. The Plaintiff has been damaged as a result of Simonetta's acts of breach Breaches by losing $252,000 from partnership revenue and the loss of partnership real property as well as the value of his intellectual property.

## Count V – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

49. Plaintiff realleges paragraphs 1-26 as if fully set out herein.

50. In skimming the $252,000 in partnership revenue, Simonetta breached the express terms of the parties' contract requiring him to account honestly for revenue and breached the covenant of good faith and fair dealing implied, as a matter of Florida law, in the parties' contract. *Ins. Concepts & Design, Inc. v. Healthplan Services*, 785 So.2nd 1232, 1234 (Fla.4th DCA 2001).

51. The Plaintiff has been damaged as a result of Simonetta's breaches by losing $252,000 from partnership revenue.

## Count VI- ACCOUNTING

52. Plaintiff realleges paragraphs 1-26 as if fully set out herein.

53. Plaintiff, as partner and principal, is entitled to an accounting of all funds misspent by Simonetta (and funds properly spent on behalf of the partners, too), including expenses and profits as a faithless fiduciary; and profits from the second project identified through Plaintiff's Business Method.

54. Further, given that Simonetta obtained partnership assets at a fire-sale from the Trustee in Plaitniff's bankruptcy, Plaintiff hereby requests that the Accounting take in to account the actual seven (7) digit value of the assets to be expertly appraised by an independent appraiser.

WHEREFORE, Plaintiff prays that this Court enter Judgement:

(a) As to Count I for restitution of all tangible and intangible assets and monies converted, plus the imposition of punitive damages in an amount sufficient to punish and deter similar wrongdoing in the future;

(b) As to Count II for payment of all damages proximately caused by Simonetta's fraudulent representations and omissions as well as for the imposition of exemplary damages in an amount sufficient to punish and to deter future fraudulent acts;

(c) As to Count III for payment of all damages proximately caused by Simonetta's serial breaches of fiduciary duty as well as for the imposition of exemplary damages in an amount sufficient to punish and to deter future breaches of fiduciary duty;

(d) As to Count IV for payment of all damages naturally and probably caused by Simonetta's contractual breach;

(e) As to Count V, for payment of all damages proximately caused by Simonetta's breach of the implied covenant of good faith and fair dealing and for the imposition of exemplary damages in an amount sufficient to punish and to deter future breaches of the implied covenant of good faith and fair dealing;

(f) As to Count VI, for an accounting to determine the exact amounts misappropriated and converted by Simonetta;

(g) And for such other and further relief as this Court deems just.

Respectfully submitted,

_Carl A. Wescott_
Carl A. Wescott